**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

_____

BRIAN ERRINGTON and ANGEL          :
ERRINGTON,                         :
        Plaintiffs,               :
                       :
      v.                          :          No. 5:24-cv-3009
                       :
CITY OF READING d/b/a READING      :
POLICE DEPARTMENT,                 :
JAVIER RUIZ, LUZ SHADE, CHRISTIAN  :
ROTHERMAL, and AARON DEMKO,        :
        Defendants.                :

_____

**O P I N I O N**
**Motion to Dismiss for Failure to State a Claim, ECF No. 11 – Granted**

**Joseph F. Leeson, Jr.**                              **January 15, 2025**
**United States District Judge**

## I.    INTRODUCTION

    This matter involves claims by Brian Errington and his wife against his former employer, the City of Reading, narrowly the Reading Police Department, as well as several named individuals in the department. Errington has filed an Amended Complaint in which he asserts a First Amendment violation against all Defendants, a Fourteenth Amendment due process violation against all Defendants, and a single state law claim of an Act 57 violation (44 Pa.C.S. § 7300, *et seq.*) against Defendants Javier Ruiz, Luz Shade, Aaron Demko, and Christian Rothermal in their individual capacities. Defendants now move to dismiss the Amended Complaint in its entirety.

    Following a review of the Amended Complaint, this Court grants Defendants' motion to dismiss in part. Errington fails to allege facts sufficient to state a First Amendment or a due process violation. Without a federal question, this Court has no supplemental jurisdiction over

the state law claim. Accordingly, Errington's Amended Complaint is dismissed without prejudice.

## II.    BACKGROUND

Brian Errington ("Errington")[1] was employed by the Reading Police Department for approximately fifteen years. *See* Amended Complaint ("Am. Compl.") ¶¶ 1, 10. His duties as part of the VICE investigations unit included investigation of narcotics sales and delivery and investigation of organized and violent crimes. *See id* at ¶ 1. This case marks the second suit in this Court by Errington against the City of Reading for violations of the First Amendment and Fourteenth Amendment.

### A.  Civil Case No. 5:21-cv-00118 ("*Errington 1*")

On January 10, 2021, Errington filed a civil complaint against the City of Reading, narrowly the Reading Police Department, as well as several named and unnamed individuals in the department who are not parties to the instant action. *See* Civil Action No. 5:21-CV-00118, Complaint, ECF No. 1. Errington's Amended Complaint alleged First Amendment and due process violations plus a *Monell* claim, *see* Civil No. 5:21-CV-00118, Amended Complaint, ECF No. 12, all of which this Court dismissed without prejudice, for failure to state a plausible claim. *See* Civil No. 5:21-CV-00118, Opinion and Order, ECF Nos. 18, 19.

---

[1]    This Court recognizes there are two Plaintiffs in this case, Brian and Angel Errington, who have sued jointly as a married couple. However, because the claims are based on allegations related to Brian Errington's employment history, *see* Amended Complaint, and because the Plaintiffs have voluntarily withdrawn their claim for loss of consortium, *see* Response at 33, this Opinion frequently refers to Brian Errington only, by use of the name "Errington." If used to describe an action taken in his individual capacity, "Errington" shall refer to Brian Errington. *See, e.g.,* Background Section, *infra*. If used to explain an action taken in this Court, "Errington" shall refer to both Plaintiffs. *See, e.g.*, Introduction Section, *supra*.

Errington's Second Amended Complaint alleged only First Amendment retaliation. *See* Civil No. 5:21-CV-00118, Second Amended Complaint, ECF No. 22. Specifically, Errington alleged that his superiors retaliated against him for challenging Direct Order 2020-00001 (the "Direct Order"), issued January 27, 2020, which required all VICE investigators, while working in their official capacity, to refrain from making any comments, remarks, or innuendos that would reflect poorly on the Reading Police Department. *See id.* at ¶¶ 23-25. Specifically, Errington alleged that on or about June 8, 2020, he was "forced to retire" after speaking out against the department's operations—namely the perceived unlawfulness of the Direct Order and perceived unfairness of union elections—in violation of the Direct Order. *Id.* at ¶¶ 13, 23-38, 42. However, Errington alleged that he did not appeal his termination because "it would have been futile" and he "could not risk his pension." *Id.* at ¶¶ 42, 44. On December 22, 2021, upon consideration of the defendants' second Motion to Dismiss, this Court dismissed Errington's Second Amended Complaint for failure to plead any new facts in support of his First Amendment claim. *Errington v. City of Reading* (hereinafter, "*Errington 1*"), No. 5:21-CV-00118, 2021 WL 6062245, at *8 (E.D. Pa. Dec. 22, 2021),[2] *aff'd*, No. 22-1073, 2022 WL 17336209 (3d Cir. Nov. 30, 2022). This Court found that Errington had failed to rebut the presumption that his termination was voluntary and to show that his speech constituted more than mere employment grievances. *Id.* Since he had failed to cure the deficiencies from his

---

[2]     There were two opinions in the earlier case of *Errington v. City of Reading, et. al.* The Opinion dated August 31, 2021, granted defendants' Motion to Dismiss Errington's Amended Complaint without prejudice. *Errington v. City of Reading*, No. 5:21-CV-00118, 2021 WL 3885177 (E.D. Pa. Aug. 31, 2021). The Opinion dated December 22, 2021, granted defendants' Motion to Dismiss Errington's Second Amended Complaint with prejudice. *Errington v. City of Reading*, No. 5:21-CV-00118, 2021 WL 6062245 (E.D. Pa. Dec. 22, 2021), *aff'd*, No. 22-1073, 2022 WL 17336209 (3d Cir. Nov. 30, 2022). References herein to either opinion will use the same case name, *Errington v. City of Reading, et. al.* ("*Errington 1*") but can be distinguished by the Westlaw citations.

Amended Complaint, his Second Amended Complaint still had not sufficiently alleged that he suffered an adverse employment action after engaging in protected speech. *Id.* This dismissal was made with prejudice and the case was closed. *Id.*

**B. Errington's Personnel File**

After Errington's termination from Reading Police Department in June 2020, and while *Errington 1* was still pending in this Court, Pennsylvania lawmakers passed Act 57 of 2020. 44 Pa.C.S. § 7300, *et seq.* Errington alleges that Act 57 requires the state to maintain records of law enforcement officers who have been disciplined or fired over certain offenses and required state agencies to run checks against that database in advance of making new hires. *See* Am. Compl. ¶ 19. Errington further alleges that Act 57 does not apply retroactively to events occurring before its effective date of July 14, 2021, *id.* at ¶ 20, so Errington did not anticipate that any internal affairs investigation related to his June 2020 termination would be included in his personnel file, *id.* at ¶ 21.

Errington began searching for new work opportunities in 2023. *Id.* at ¶ 22. At that time, Errington contacted a non-party Sergeant Fegley from Reading Police Department to obtain copies of his training certificates and awards, and asked Fegely to ensure that no internal affairs investigation related to his termination would be included in his personnel file, which Fegely confirmed. *Id.* at ¶¶ 23-24. In the Summer of 2023, Errington began applying for jobs in various law enforcement departments and agencies but was rejected. *Id.* at ¶¶ 25-29. Errington investigated and determined that these agencies conducted background checks which revealed the internal affairs investigation was present in his personnel file at Reading Police Department. *Id.* at ¶¶ 27, 30. More specifically, Errington alleges that Defendant Ruiz, Defendant Shade, and a non-party "Diane" (Defendant Ruiz's secretary) were responsible for maintaining Errington's

personnel file. *Id.* at ¶ 18. When asked why Errington was not hired, the police departments for Bern Township, Eastern Berks Regional, and Lower Heidelberg Township explicitly cited the content of his personnel file as the reason for the denial of employment. *Id.* at ¶ 32.

On or about January 4, 2024, Errington and his wife visited Reading Police Department, found the internal affairs investigation in his personnel file, and asked that it be removed. *Id.* at ¶¶ 33-36. Errington alleges that the internal affairs information present in his file included allegations "that Plaintiff had, *inter alia*, been verbally abusive to other officers, lied to Internal Affairs, and abused sick leave." *Id.* at ¶ 34. Fegely, Defendant Shade, and the Chief's secretary responded that this information should not be in his file and would be removed. *Id.* at ¶ 37. On or about January 8, 2024, a representative of Lower Heidelberg came to Reading City Hall to review Errington's personnel file and found the internal affairs allegations still in the file. *Id.* at ¶ 38. Errington cites this as the reason that he was not hired for the law enforcement position in Lower Heidelberg Township to which he applied. *Id.* On or about January 15, 2024, Errington and his wife again visited Reading Police Department, but were denied access to his personnel file by Defendants Shade, Rothermal, and Demko, based on instruction from the Police Department Chief, Defendant Ruiz. *Id.* at ¶¶ 39-42. Defendant Rothermal explained that the internal affairs investigation relating to Errington's termination would remain in his personnel file and that access to this information must be given to a hiring department if asked whether Errington was "in the process" of being investigated when he retired from Reading Police Department. *Id.* at ¶ 44. Errington alleges that the Defendants purposefully placed the internal affairs investigation back into his personnel file two years after his retirement, under the impression that Act 57 justified it, and with the intent to cause Errington harm and to prevent him from gaining future employment. *Id.* at ¶¶ 45-46.

### C. Procedural History

On August 21, 2024, Errington filed an Amended Complaint. *See* Am. Compl. Count I asserts a cause of action arising under Act 57 (44 PA.C.S § 7300, et seq.), Count II asserts a claim for intentional infliction of emotional distress (IIED), and Count III asserts a claim for loss of consortium. *See id.* Counts I through III are asserted against Defendants Ruiz, Shade, Demko, and Rothermal. *See id.* Count IV asserts a First Amendment violation under 42 U.S.C. § 1983, and Count V asserts due process violations of the Fourth and Fourteenth Amendments under 42 U.S.C. § 1983. *See id.* These constitutional claims are asserted against all Defendants. On September 3, 2024, Defendants filed a Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(6). *See* ECF No. 11. In his Response, Errington voluntarily withdrew Counts II and III for IIED and loss of consortium, along with the Section 1983 claim under the Fourth Amendment.[3] Response, ECF No. 14 at 33-34.

At present, Errington's remaining claims include the Act 57 violation pled against Defendants Ruiz, Shade, Rothermal, and Demko in their individual capacities; a First Amendment violation against all Defendants; and a Fourteenth Amendment violation against all Defendants. The Motion to Dismiss the Amended Complaint is now ready for review.

### III. LEGAL STANDARDS

#### A. Federal Rule of Civil Procedure 12(b)(6) – Review of Applicable Law

In rendering a decision on a motion to dismiss, this Court must "accept all factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff."

---

[3] Also voluntarily withdrawn was Errington's claim for an Act 57 violation *only as against* Defendant Ruiz in his official capacity as Police Chief. Response, ECF No. 14 at 34. This state law claim proceeds against Defendants Ruiz, Shade, Demko, and Rothermal in their individual capacities.

*Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (quoting *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)) (internal quotation marks omitted). Only if "the '[f]actual allegations . . . raise a right to relief above the speculative level'" has the plaintiff stated a plausible claim. *Id.* at 234 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Id.* (explaining that determining "whether a complaint states a plausible claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). "In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *See Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010). The defendant bears the burden of demonstrating that a plaintiff has failed to state a claim upon which relief can be granted. *See Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)).

      **B.**     **Section 1983 First Amendment Retaliation Claim  - Review of Applicable Law**

      42 U.S.C. § 1983 is the vehicle by which federal constitutional claims may be brought in federal court. "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). Additionally, a "defendant in a civil rights action must have personal involvement

in the alleged wrongs." *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

Moreover, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead

that each Government-official defendant, through the official's own individual actions, has

violated the Constitution." *Iqbal*, 556 U.S. at 676.

"Retaliation for the exercise of constitutionally protected rights is itself a violation of

rights secured by the Constitution actionable under section 1983." *White v. Napoleon*, 897 F.2d

103, 111–12 (3d Cir. 1990). To set forth a cognizable First Amendment retaliation claim, a

plaintiff must allege that: "(1) he engaged in a constitutionally protected activity; (2) he suffered,

at the hands of a state actor, adverse action sufficient to deter a person of ordinary firmness from

exercising his constitutional rights; and (3) the protected activity was a substantial or motivating

factor in the state actor's decision to take adverse action." *Fantone v. Latini*, 780 F.3d 184, 191

(3d Cir. 2015), *as amended* (Mar. 24, 2015) (citing *Rauser v. Horn*, 241 F.3d 330, 333 (3d Cir.

2001)). *See also Falco v. Zimmer*, 767 F. App'x 288, 310 (3d Cir. 2019), *Munroe v. Central

Bucks Sch. Dist.*, 805 F.3d 454, 466 (3d Cir. 2015) *as amended* (Oct. 25, 2019), and *Dougherty

v. Sch. Dist. of Phila.*, 772 F.3d 979, 986 (3d Cir. 2014) (each finding that a public employee

suing his employer for First Amendment retaliation must show that (1) his speech is protected by

the First Amendment and (2) the speech was a substantial or motivating factor in the alleged

retaliatory action).

"To establish the requisite causal connection a plaintiff usually must prove either (1) an

unusually suggestive temporal proximity between the protected activity and the allegedly

retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link."

*Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007). *See also Falco*, 767

F. App'x at 310 ("[T]he timing of the alleged retaliatory action must be 'unusually suggestive' of

retaliatory motive before a causal link will be inferred.") (quoting *Estate of Smith v. Mascaro*, 318 F.3d 497, 512 (3d Cir. 2003)); *Marra v. Philadelphia Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007), *as amended* (Aug. 28, 2007) ("Where the time between the protected activity and adverse action is not so close as to be unusually suggestive of a causal connection standing alone, courts may look to the intervening period for demonstrative proof, such as actual antagonistic conduct or animus against the employee" or to "other types of circumstantial evidence . . . that give rise to an inference of causation when considered as a whole.") (citing *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 280-81 (3d Cir. 2000) and *Woodson v. Scott Paper Co.*, 109 F.3d 913, 921 (3d Cir. 1997)).

### C.      Procedural Due Process – Review of Applicable Law

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill v. Borough of Kutztown*, 455 F.3d 225, 233-34 (3d Cir. 2006) (citing *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000)).

"To make out a claim for deprivation of a liberty interest in reputation, 'a plaintiff must show a stigma to his reputation plus deprivation of some additional right or interest.'" *Kocher v. Larksville Borough*, 548 F. App'x 813, 819 (3d Cir. 2013) (quoting *Hill*, 455 F.3d at 236 (emphasis removed) (citing *Paul v. Davis*, 424 U.S. 693, 701 (1976)). In the public employment context, under the "stigma-plus" test "[t]he creation and dissemination of a false and defamatory impression is the 'stigma,' and the termination is the 'plus.' When such a deprivation occurs, the employee is entitled to a name-clearing hearing." *Id.* at 820 (quoting *Hill*, 455 F.3d at 236). To satisfy the "stigma" factor, "a plaintiff must show (1) that the stigmatizing statement was made

publicly, and (2) that the statement was substantially and materially false." *Id.* (citing *Hill*, 455 F.3d at 236). The Third Circuit has indicated that statements reflecting "dishonesty, or immorality or any similar serious character defects" may be of a stigmatizing character. *McKnight v. Se. Pennsylvania Transp. Auth.*, 583 F.2d 1229, 1236 (3d Cir. 1978) (internal quotations omitted). To meet the "made publicly" requirement, a plaintiff must allege that a defendant is responsible for more than drafting the statement or "simply depositing material into an employee's personnel file," for "it is the dissemination of the contents of an employee's personnel file that must be shown for a claim to be successful." *Kocher*, 548 F. App'x at 820-21 (internal citations omitted). To establish a "plus," the plaintiff must show some affected right or interest as represented by either "a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark v. Twp. of Falls*, 890 F.2d 611, 619 (3d Cir. 1989) (citing *Paul*, 424 U.S. at 701-12).

The Third Circuit has held that "a public employee who is defamed in the course of being terminated or constructively discharged satisfies the 'stigma-plus' test even if, as a matter of state law, he lacks a property interest in the job he lost." *Hill*, 455 F.3d at 238. *See also McKnight*, 583 F.2d at 1236 (vacating a motion to dismiss where plaintiff alleged that the defendants terminated him for the "untrue" accusation of "intoxication while at work," foreclosing the plaintiff from future employment opportunities by harming his reputation). This is because "[t]he liberty clause, by contrast, protects reputation, not job tenure, in the government employment context," so a plaintiff may allege a deprivation of a liberty interest even where no property interest exists. *Id.* (quoting *Doe v. U.S. Dept. of Justice*, 753 F.2d 1092, 1104–1112 (D.C. Cir. 1985)).

D.    **Collateral Estoppel – Review of Applicable Law**

"[O]nce a court has decided an issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue in a suit on a different cause of action involving a party to the first case." *Dici v. Com. of Pa.*, 91 F.3d 542, 547 (3d Cir. 1996) (quoting *Allen v. McCurry*, 449 U.S. 90, 94 (1980); *see also* Restatement (Second) of Judgments § 27 (1982)). "Under Pennsylvania law, the following conditions must be satisfied for collateral estoppel to bar a subsequent claim: (1) the issue decided in the prior case must be identical to the one presented in the later case; (2) there was a final judgment on the merits in the prior action; (3) the party against whom collateral estoppel is asserted was a party to the prior action, or is in privity with a party to the prior action; and (4) the party against whom collateral estoppel is asserted had a full and fair opportunity to litigate the issue in the prior action." *Nationwide Mut. Fire Ins. Co. v. George V. Hamilton, Inc.*, 571 F.3d 299, 310 (3d Cir. 2009) (cleaned up); *see also Kedra v. Schroeter*, 876 F.3d 424, 434 (3d Cir. 2017); *Dici*, 91 F.3d at 548 (citing *Safeguard Mut. Ins. Co. v. Williams*, 345 A.2d 664, 668 (1975) (other citations omitted); *Shaffer v. Smith*, 673 A.2d 872, 874 (1996)). Sometimes, Pennsylvania courts "add a fifth element, namely, that resolution of the issue in the prior proceeding was essential to the judgment." *In re Appeal of Coatesville Area Sch. Dist.,* 244 A.3d 373, 379 (2021) (citing *Off. of Disciplinary Couns. v. Kiesewetter*, 889 A.2d 47, 50–51 (2021)). *See, e.g., Karns v. Shanahan*, 879 F.3d 504, 514 n.3 (3d Cir. 2018); *Nat'l R.R. Passenger Corp. v. Pennsylvania Pub. Util. Comm'n*, 288 F.3d 519, 525 (3d Cir. 2002); *Witkowski v. Welch*, 173 F.3d 192, 199 (3d Cir. 1999); *Burlington N. R. Co. v. Hyundai Merch. Marine Co.*, 63 F.3d 1227, 1231–32 (3d Cir. 1995).

It is presumed that parties have a full and fair opportunity to litigate an issue whenever proceedings satisfy the minimum procedural requirements of the Fourteenth Amendment's Due

Process Clause. *See Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 481 (1982) The Third Circuit has identified the following as elements essential to due process: "(1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result." *Di Loreto v. Costigan*, 600 F. Supp. 2d 671, 698 (E.D. Pa. 2009), *aff'd*, 351 F. App'x 747 (3d Cir. 2009).

### E.    Supplemental Jurisdiction – Review of Applicable Law

Pursuant to 28 U.S.C. § 1367(c)(3), "district courts may decline to exercise supplemental jurisdiction over a claim ... if ... [it] has dismissed all claims over which it has original jurisdiction." "A district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009). In deciding whether to exercise supplemental jurisdiction, the district courts should consider factors such as judicial economy, convenience, and fairness to litigants. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966) (holding that "if these [factors] are not present a federal court should hesitate to exercise jurisdiction over state claims, even though bound to apply state law to them"). The United States Supreme Court has further advised that "if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Id.*

## IV.    Analysis

### A.  Section 1983 – First Amendment Retaliation.

Defendants contest elements one and three of Errington's First Amendment retaliation claim, arguing that he has not engaged in protected activity and, to the extent he has, there exists

no causation between Errington's protected activity and the placement of the challenged information in his personnel file. The Court addresses each in turn.

### 1.  Protected Activity

At the outset, the Court notes that Errington's Amended Complaint is largely unclear as to what protected activity forms the basis of his retaliation claim. However, it appears that there are three potential areas of protected activity from his Amended Complaint as clarified in his Response. They are: (1) speaking out against the Direct Order while employed at Reading Police Department, Am. Compl. at ¶ 83; (2) speaking out about union elections while employed at Reading Police Department, *id.*; and/or (3) the filing of the *Errington I* lawsuit, *see id.* at ¶ 11; Response at 21.

### a.  Speaking out Against the Direct Order

In his Amended Complaint, Errington alleges that his speech was protected by the First Amendment when he spoke out against the Direct Order while employed at Reading Police Department. Am. Compl. at ¶ 83. Defendants argue that this issue was actually litigated in *Errington 1*, and is thus barred by collateral estoppel. This Court has already made a legal determination that such speech is not protected under the First Amendment:

> Here, Errington fails to allege speech made as a citizen. Indeed, the speech relates directly to an order that Errington received by virtue of his employment with the Reading Police Department. Instead, this speech appears to be a complaint made up the chain of command regarding a workplace duty or condition. These sorts of internal complaints about the conditions and duties of employment are not protected by the First Amendment. Accordingly, because this speech was made up the chain of command and it squarely involved the duties and conditions of Errington's employment, this speech is not protected under the First Amendment [. . .] the speech is a personal employment grievance regarding the conditions and duties of Errington's employment. To be sure, Errington's allegations indicate that his concern was the use of the Direct Order against his own "personal conversations." Accordingly, because this speech involved a personal employment grievance, it does not warrant protection under the First Amendment.

*Errington 1*, No. 5:21-CV-00118, 2021 WL 3885177, at \*7 (E.D. Pa. Aug. 31, 2021) (internal citations omitted). Whether speaking out against the Direct Order is protected First Amendment activity is the same issue as that already decided in *Errington 1. See id; see also Nationwide*, 571 F.3d at 310. This Court made a final determination on the merits that Errington's speech about the Direct Order constituted a personal employment grievance that warranted no protection under the First Amendment. *See id.*; *See Nationwide,* 571 F.3d at 310. This determination was essential to the Court's ultimate dismissal with prejudice, *Karns*, 879 F.3d at 514 n.3, because there can be no claim for First Amendment retaliation without first establishing that Errington engaged in protected activity. *Id.*

Errington was, of course, a party to the prior action, *Errington 1*, *see Nationwide*, 571 F.3d at 310, but makes no assertion that the court proceedings therein failed to satisfy the minimum procedural due process requirements of the Fourteenth Amendment,[4] *see Kremer*, 456 U.S. at 481. Having no reason to conclude that the *Errington 1* proceedings failed to satisfy due process, this Court shall presume that Errington had a full and fair opportunity to litigate this issue. *See id.* Thus, the issue of whether Errington's speech about the Direct Order is protected is barred by collateral estoppel, *see Nationwide*, 571 F.3d at 310, and this Court need not consider whether this speech was a substantial or motivating factor in any alleged retaliatory action. Moreover, since Errington failed to take advantage of the several opportunities presented in the prior action to plead facts sufficient to support this allegation, and since the Amended Complaint in the instant action pleads no more facts to this effect, this Court finds that further amendment

---

[4]    Specifically, Errington has failed to allege that the following minimum requirements were not met in *Errington 1*: "(1) notice; (2) a neutral arbiter; (3) an opportunity to make an oral presentation; (4) a means of presenting evidence; (5) an opportunity to cross-examine witnesses or to respond to written evidence; (6) the right to be represented by counsel; and (7) a decision based on the record with a statement of reasons for the result." *Di Loreto*, 600 F. Supp. 2d at 698.

would be futile. *See Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004) (holding that "if a complaint is vulnerable to 12(b)(6) dismissal, a District Court must permit a curative amendment, unless an amendment would be inequitable or futile"). Errington is denied leave to amend his First Amendment retaliation claim to further assert that his protected activity includes speaking out about the Direct Order while still employed by Reading Police Department.

### b.  Speaking out about Union Elections

Insofar as Errington alleges that his protected speech includes speaking out about union elections while employed at Reading Police Department, the allegations in the Amended Complaint are insufficient to describe the speech at all, let alone establish whether it is protected under the First Amendment. *See* Am. Compl. ¶ 83 ("Plaintiff spoke out about several public concerns: union elections […]"). Previously equipped with more factual allegations to this point, this Court in *Errington 1* still declined to analyze whether this speech was protected, because it ultimately found no causal link to the alleged retaliation that he was "forced into retirement." *See Errington 1*, 2021 WL 6062245, at *6 ("[E]ven if this Court assumes that Errington has alleged some protected speech in this letter, Errington fails to sufficiently allege an adverse employment action or requisite causal link"). Without a prior, final determination of the issue, Errington is not collaterally estopped from arguing that his speech regarding union elections is protected under the First Amendment.

Plus, Errington alleges here for the first time that Defendants' retaliation included keeping the internal affairs investigation in his personnel file and disseminating it to prospective employers. This Court's prior determination that Errington failed to plead a causal link between his speech about union elections and a retaliatory action is thus irrelevant to the current First Amendment retaliation claim. Though skeptical of Errington's ability to link the two events, this Court cannot yet conclude that Errington is incapable of pleading facts sufficient to show that his

speech against union elections was protected *and* causally linked to the Department's maintenance and dissemination of investigatory information in his file. Thus, Errington is granted limited leave to amend his complaint to plead additional facts to support these points.

### c.  The Filing of *Errington 1*

In his Response to Defendants' Motion to Dismiss, Errington alleges that the filing of his earlier suit, *Errington 1*, also constitutes protected speech. Response at 21. Though this allegation first became apparent to the Court in the Response, this event was pled in Errington's statement of facts, Am. Compl. ¶ 11, and will be considered.

Defendants argue that the filing of *Errington I* is not protected activity because it is not a matter of public concern. In making this argument, Defendants invoke the public-employee framework for evaluating First Amendment claims of public employees.[5] However, the Court is skeptical that the public-employee speech framework applies to the filing of Errington's suit because he was not a public employee at the time it was filed. *See id.* at ¶¶ 11-12. That framework attempts to balance the public employee's right to free speech with the public-employer's inherent right, "like their private counterparts," to make "restrictions that are necessary for efficient and effective operations." *Munroe*, 805 F.3d at 466. Yet that

---

[5]    To make out a claim of retaliation under the First Amendment, a public employee must show, "(1) his speech is protected by the First Amendment and (2) the speech was a substantial or motivating factor in the alleged retaliatory action . . . ." *See Munroe*, 805 F.3d at 466 (quoting *Dougherty*, 772 F.3d at 986). Where an employee alleges these two elements, the burden then shifts to the employer to  show "the same action would have been taken even if the speech had not occurred." *See id.*

In order for speech to be considered "protected," three elements must be present:
(1) "the employee must speak as a citizen (and not an employee);"
(2) "'the speech must involve a matter of public concern;'" and
(3) "'the government must lack an adequate justification for treating the employee differently than the general public based on its needs as an employer under the Pickering balancing test.'" *See id.* (quoting *Dougherty*, 772 F.3d at 987).

'management interest,' so to speak, evaporated when Errington left public employ and became a

private citizen because Errington's speech could no longer affect the "efficient provision of [the

Police Department's] public services." *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). Reading

Police Department had lost its ability to "leverage the employment relationship to restrict"

Errington's speech rights, *id.* at 419, because Errington retired in June 2020 and did not file the

*Errington 1* complaint until January 10, 2021, *see* Civil Action No. 5:21-CV-00118, Complaint,

ECF No. 1.[6]

---

[6]     To the extent that the filing of *Errington 1* could be interpreted as occurring within the
public employment context, this Court still finds that it is protected speech under the First
Amendment. By initiating his lawsuit, Errington spoke as a citizen, because Errington's "filing
this action was not within his ordinary job responsibilities." *Falco*, 767 F. App'x at 307 (citing
*Lane v. Franks*, 573 U.S. 228, 238 (2014) (explaining, in protected speech analysis, that
testifying in court was outside of the plaintiff's job responsibilities)). Supreme Court
jurisprudence suggests that Errington's former suit involved a matter of public concern because
Errington alleged that a state law enforcement agency violated his constitutional rights after he
spoke out against a department policy. *See Lane*, 573 U.S. at 240 ("[S]peech by public
employees on subject matter related to their employment holds special value precisely because
those employees gain knowledge of matters of public concern through their employment"); *id.* at
241 ("Speech involves matters of public concern when it can be fairly considered as relating to
any matter of political, social, or other concern to the community or . . . a subject of general
interest and of value and concern to the public.") (internal quotations omitted)). Third Circuit
precedent supports finding that the lawsuit involved a matter of public concern simply because it
was litigated. *See Falco*, 767 F. App'x at 307 ("[A]ll court appearances are matters of public
concern . . . because all court appearances implicate the public's interest in the integrity of the
truth seeking process and the effective administration of justice.") (quoting *Green v.
Philadelphia Hous. Auth.*, 105 F.3d 882, 888 (3d Cir. 1997), *as amended* (Mar. 13, 1997)).
        This Court must lastly determine if there exists an "'adequate justification' for treating
the employee differently than the general public based on its needs as an employer under the
Pickering balancing test." *Munroe*, 805 F.3d at 466. To apply *Pickering* one must "balance ... the
interests of the [employee], as a citizen, in commenting upon matters of public concern and the
interest of the State, as an employer, in promoting the efficiency of the public services it
performs through its employees." *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will
Cnty., Ill.*, 391 U.S. 563, 568 (1968). Where "the parties have not briefed this issue[,] we must
draw reasonable inferences on our own." *Falco*, 767 F. App'x at 307. Here, Errington "has a
strong interest in vindicating his constitutional rights," *id.*, while Defendants (together the
Reading Police Department and several of its employees) presumably have an interest in the
efficiency of their Department's operations, which may be hampered by a case like *Errington 1*.
*See id.* On the whole, Defendants have not stated another reason for "treating [Errington]

Set loose from that framework, the Court has little trouble concluding that the filing of a lawsuit constitutes protected conduct. *See Anderson v. Davila*, 125 F.3d 148, 161-62 (3d Cir. 1997) (holding that "an individual's constitutional right of access to court is protected by the First Amendment's clause granting the right to petition the government for grievances" and that this holding "is not limited to prisoners" because "we have held that official retaliation for the exercise of *any* constitutional right creates an actionable claim under Section 1983."); *see also Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002) ("[B]oth filing a lawsuit and filing grievances are protected activities"). Defendants argue that where the *conduct* underlying *Errington I* was ultimately determined not to be protected conduct, so too must the Court conclude that *filing Errington I* must also not be protected conduct. *Cf. Falco*, 767 F. App'x at 307 ("[F]iling a lawsuit qualifies as speech if a plaintiff 'allege[s] that his employer retaliated against him for the speech contained within his ... lawsuit.'") (quoting *Borough of Duryea, Pa. v. Guarnieri*, 564 U.S. 379, 387 (2011)). That is not so because an individual has an independent right of access to the courts. U.S. Const. amend. I. *See also Anderson*, 125 F.3d at 161.[7] Thus, the Court finds that Errington's filing of the prior case, *Errington 1*, constitutes protected activity under the First Amendment. *Id.*

---

differently than the general public," *see Munroe*, 805 F.3d at 466, so Errington's interests in protecting his constitutional rights under the First Amendment are determined to carry stronger weight. *See Falco*, 767 F. App'x at 308. Accordingly, to the extent it is viewed within the public employment context, Errington's filing of the prior case, *Errington 1*, constitutes protected activity under the First Amendment. *Id.*

[7]     As an aside, this Court notes that the above-referenced Third Circuit cases which advance this idea (that an individual's filing of a case is considered protected activity under the First Amendment's right to access the courts) involved plaintiffs who filed retaliation lawsuits while still employed in the public domain, and so analyzed their activity within the public employment framework. *See e.g.*, *Falco*, 767 F. App'x at 307; *Anderson*, 125 F.3d at 161-62; *Green*, 105 F.3d at 888. Distinguishing the instant case from the facts of those cases, this Court nonetheless adheres to the Third Circuit's reasoning that the First Amendment protects citizens' access to the courts generally.

### 2. Causation

The second inquiry for the Court is whether the speech was a "substantial or motivating factor in the alleged retaliatory action." *Munroe*, 805 F.3d at 466 (citing *Dougherty*, 772 F.3d at 986). This requires the plaintiff to show that there is some "causal link" between the protected speech and the alleged retaliatory action. *See DeFlaminis*, 480 F.3d at 267; *see also Falco*, 767 F. App'x at 310 (citing *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003). Some "temporal proximity between the protected activity and the alleged retaliatory action" may be indicative of causation, but alone is not dispositive of causation unless the timing is "unusually suggestive" that the particular speech triggered the retaliation. *Falco*, 767 F. App'x at 310 (quoting *Estate of Smith*, 318 F.3d at 512). Where temporal proximity is lacking, causation may be inferred from the record if, in the intervening period between the protected activity and the alleged retaliation, a pattern of "antagonistic conduct" or some other circumstantial evidence is shown that is indicative of causation. *Marra*, 497 F.3d at 302 (citing *Farrell*, 206 F.3d at 280-81 and *Woodson*, 109 F.3d at 921). Here, no temporal proximity or intervening animus is alleged that is sufficient to trigger an inference of causation between Errington's alleged protected activity and Defendants' alleged retaliation.

### a. Errington has failed to allege temporal proximity between his protected speech and a retaliatory action.

The only retaliatory action cited as a consequence of *Errington I* is the placement of the internal affairs investigation into Errington's personnel file.[8] Here, a timeline of events is key to

---

[8]    In the Title VII context, this District has before suggested that placing disciplinary documents in an employee's personnel file and making them available to potential future employers may constitute an adverse employment action. *See, e.g., Leite v. Sch. Dist. of Philadelphia*, No. CV 22-306, 2024 WL 3606319, at *7 (E.D. Pa. July 30, 2024) ("If proven, [plaintiff]'s allegation that the written warning was placed in her file and interfered with employment opportunities would constitute an adverse employment action."); *McLaughlin v. Com. of Pennsylvania*, No. CIV. A. 98-CV-2686, 1999 WL 58658, at *5 (E.D. Pa. Jan. 25, 1999)

determining whether there is temporal proximity sufficient to suggest a causal link. Errington

filed his earlier suit on January 10, 2021. *See Errington 1*, Civil No. 5:21-CV-00118, ECF No. 1.

That case was terminated on December 22, 2021, by this Court's Opinion dismissing Errington's

Second Amended Complaint without prejudice. *See Errington 1*, 2021 WL 6062245 at *8. In the

instant case, Errington alleges that in early 2023, upon initiating a new job search, Errington

contacted Reading Police Department and was assured that "nothing from the aforementioned

Internal Affairs Investigation was in his file." Am. Compl. at ¶ 24. Yet, on or about January 4,

2024, when visiting Reading Police Department, Errington "found the internal affairs allegations

leading to his forced retirement in his personnel file." *Id.* at ¶ 34. Errington was again told that

the same allegations were in his personnel file when he visited the Reading Police Department

on January 15, 2024. *Id.* at ¶¶ 39, 44. Errington then alleges in his Amended Complaint that

"Defendants put the Internal Affairs Investigation into Plaintiff's file approximately two years

after he retired, under the illusion that Act 57 justified it," *id.* at ¶ 46, and "with the intent of

causing harm and preventing him from gaining future employment," *id.* at ¶ 45.

By accepting the allegations in the Amended Complaint as true, this Court notes the

following: The internal affairs investigation was not in Errington's personnel file from the time

he retired from Reading Police Department in June 2020 until around January of 2024. *Id.* at

¶¶ 17, 23-24, 33-34. Errington's earlier case, *Errington 1*, commenced and terminated (in the

defendants' favor) within the year 2021. *See id.* at ¶ 11; Civil No. 5:21-cv-00118. Act 57 became

---

("In our District, it has been held that placing disciplinary notices in a personnel file amounted to
an adverse employment action . . . Plaintiff's testimony that officers made false disciplinary
reports is sufficient to establish an adverse employment action."). Courts in the Third Circuit
have not yet opined whether the same actions would be considered adverse if taken in retaliation
to an employee's protected conduct (under the First Amendment), rather than their protected
status.

effective in Pennsylvania in July 2021. Am. Compl. at ¶ 20. Errington alleges that Act 57 requires state law enforcement departments to keep records of officers who have been disciplined, investigated, or fired over certain offenses. *Id.* at ¶ 19. Errington further alleges that Defendants placed the internal affairs investigation into his file, nearly three years later, because they believed "Act 57 justified it." *Id.* at ¶ 46. This last allegation is the reason Errington fails to state a claim for retaliation.

Errington makes clear in his Amended Complaint that he believes Act 57 does not apply retroactively, *id.* at ¶ 20, and believes that Defendants placed his internal affairs investigation information into his personnel file several years after his retirement and Act 57's effective date "under the illusion" that Act 57 applied retroactively, *id.* at ¶ 46 (emphasis added). Thus, from Errington's point of view, Defendants based their initial decision to update his personnel file based not on retaliation but on their perceived application of a state law. By this allegation itself, Errington pleads himself out of a retaliation claim.

Separately, to the extent that Errington is alleging that Defendants merely *used* Act 57 as a justification for their actions when really, they sought to prevent him from gaining future employment in law enforcement, see *id.* at ¶ 45, this argument lacks the temporal proximity to show causation. Errington's prior lawsuit, *Errington 1*, was both initiated and concluded in the year 2021, ending favorably for the defendants. *See Errington 1*, 2021 WL 6062245 at *8. Errington does not allege that the internal affairs investigation information was present in his personnel file until early 2024. Am. Compl. ¶¶ 33-34. From the facts alleged, this Court finds no reasonable inference that the Reading Police Department and its employees retaliated against Errington in 2024 for filing a lawsuit almost three years prior.

Further, to the extent that Errington tries to allege that Defendants removed the internal affairs investigation from Errington's file on January 4, 2024 (as indicated to Errington that they would), *id.* at ¶ 37, and then placed that information *back into* the file in the coming days, *see id.* at ¶¶ 38-44, 59, Errington still cannot allege that this was retaliation. Again, there is no temporal proximity or other causal connection alleged. If the internal affairs investigation was already included in the file on January 4, 2024, then its re-inclusion on January 8 or 15, 2024 cannot be said to be retaliation for a lawsuit that took place in 2021. As currently stated, these facts do not allow the Court to draw to a reasonable inference that Defendants' actions were retaliatory.

### b. Errington has failed to allege facts sufficient to establish intervening antagonism.

In his Response, Errington argues that his Amended Complaint also pleads sufficient facts to show intervening antagonistic conduct by Defendants in the period between the filing of *Errington I* and the placement of the challenged allegations in his file. However, Errington points only to the same timeline of events mentioned above: the lack of any investigatory information in Errington's personnel file when he retired from Reading Police Department in June 2020; his filing of *Errington 1* in January 2021, and the inclusion of the internal affairs investigation in his personnel file in January 2024. No facts are alleged to have occurred between these events which would support an inference of antagonistic conduct or animus sufficient to connect the protected conduct of filing *Errington 1* with the alleged retaliatory action of placing investigatory information in Errington's file and disseminating it. Errington asserts that the antagonistic conduct *is* the alleged retaliation– but that cannot be. This Court, in absence of temporal proximity, must look to events occurring *between* 2021 and January 2024 for evidence of some causal connection between the protected activity and the alleged retaliation. Finding none, the Court is hard pressed to agree with Errington that intervening antagonism is present, but

nonetheless grants leave to amend to plead facts in support of this point, if they exist. Since Errington has failed to state a claim for First Amendment retaliation, the Court will dismiss Count IV, without prejudice.[9]

### B. Fourteenth Amendment - Procedural Due Process "Stigma-Plus" claim.

"To state a claim under § 1983 for deprivation of procedural due process rights, a plaintiff must allege that (1) he was deprived of an individual interest that is encompassed within the Fourteenth Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did not provide 'due process of law.'" *Hill*, 455 F.3d at 233-34 (citing *Alvin*, 227 F.3d at 116). A properly pled stigma-plus due process claim requires "a plaintiff [to] show a stigma to his reputation plus deprivation of some additional right or interest." *Kocher*, 548 F. App'x at 819 (quoting *Hill*, 455 F.3d at 236 (emphasis removed) (citing *Paul*, 424 U.S. at 701).

### 1. "Stigma"

To satisfy the "stigma" factor of the stigma-plus test, "a plaintiff must show (1) that the stigmatizing statement was made publicly, and (2) that the statement was substantially and materially false." *Id.* (citing *Hill*, 455 F.3d at 236).

---

[9] As noted, a "defendant in a civil rights action must have personal involvement in the alleged wrongs." *See Rode*, 845 F.2d at 1207. Moreover, "[b]ecause vicarious liability is inapplicable to ...§ 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Thus, presented with a motion to dismiss, the Court will often parse the complaint to determine the personal involvement of each individual and/or engage in a protracted *Monell* analysis where the plaintiff asserts municipal liability. However, because Errington has failed to establish the violation of a constitutional right altogether as to Count IV, the Court need not address the liability of each named defendant.

Separately, this Court finds a First Amendment retaliation claim against both the City of Reading d/b/a Reading Police Department and Defendant Ruiz, in his official capacity as the Police Chief, to be duplicative. Leave to amend is not granted for the claim against Ruiz in his official capacity. The current First Amendment retaliation claim (Count IV) against Ruiz, in his official capacity, is dismissed with prejudice. All remaining First Amendment retaliation claims against the City of Reading and Defendants Ruiz, Shade, Rothermal, and Demko, in their individual capacities, are dismissed without prejudice.

### a. Stigmatizing Statement

To state a deprivation of a liberty interest in reputation under Section 1983, a plaintiff must first allege the existence of a stigmatizing statement, *see Kocher*, 548 F. App'x at 819, or that which reflects "dishonesty, or immorality or any similar serious character defects," *McKnight*, 583 F.2d at 1236 (internal quotations omitted). Here, Errington alleges that "Defendants added baseless allegations to Plaintiff's personnel file and disseminated said allegations to potential employers," which "caused Plaintiff harm and prevented him from gaining future employment." Am. Compl. ¶¶ 91-92. Errington clarifies that the internal affairs information present in his file included allegations "that Plaintiff had, *inter alia*, been verbally abusive to other officers, lied to Internal Affairs, and abused sick leave." *Id.* at ¶ 34. Errington also alleges that Defendant's maintenance and dissemination of information in his personnel file had the effect of "tarnishing his professional reputation and obstructing his career advancement without just cause." *Id.* at ¶ 61.

While allegations of impolite speech and abuse of sick leave may not rise to the level of establishing immorality *per se*, these comments directly accuse Errington of dishonesty during the course of the internal affairs investigation, which has a stigmatizing effect on his character. *See Robb v. City of Philadelphia*, 733 F.2d 286, 294 (3d Cir. 1984); *McKnight*, 583 F.2d at 1236. While it is uncertain whether such a statement would "seriously damage his standing and associations in the community," it at least has the effect of altering his reputation in the local law enforcement community and may "foreclose[] his freedom to take advantage of other employment opportunities" therein. *See id.* This Court finds that Errington has sufficiently alleged the existence of a stigmatizing statement with the potential to harm his reputation, as perceived by potential employers.

### b. Made Publicly

After alleging the existence of a stigmatizing statement, a plaintiff must allege that it was "made publicly," i.e., that a defendant was responsible for drafting or placing the statement into the personnel file *and* was also responsible for disseminating that information.[10] *Kocher*, 548 F. App'x at 820-21. Third Circuit courts have before found the "made publicly" requirement to be satisfied where one or more defendants is shown to be responsible for issuing the statement "presumably with the knowledge that it would be made publicly available." *Arneault v. O'Toole*, 864 F. Supp. 2d 361, 396 (W.D. Pa. 2012), *aff'd on other grounds*, 513 F. App'x 195 (3d Cir. 2013).

Here, Errington has clearly alleged that Defendants Ruiz, Shade, and a non-party secretary, "Diane," were the custodians "responsible for maintaining [Errington's] personnel file" at all times relevant to the instant action. *Id.* at ¶ 18. Errington was also informed that the internal affairs allegations found in his personnel file on January 4 and 15, 2024, *see id.* at ¶¶ 33-34, 39-44, would be distributed to hiring departments that asked whether Errington was "in the process" of being investigated when he retired from Reading Police Department. *Id.* at ¶ 44. If this Court accepts the facts in the Amended Complaint as true, then in fact, this very information was later disseminated to potential employers. *Id.* at ¶ 91. This Court finds it reasonable to link the dissemination of the investigatory information to those responsible for its inclusion in Errington's file and the maintenance of that file, generally. Thus, it can be reasonably inferred that Ruiz and Shade "undertook these actions deliberately and with the expectation that the

---

[10]    A Section 1983 claim cannot proceed against a municipality unless under a *Monell* claim, so this section will first analyze the due process claims as against the individual Defendants, Ruiz, Shade, Rothermal, and Demko in their individual capacities. Only if Errington sufficiently states a Fourteenth Amendment due process claim will this Court proceed to analyze the due process claims against the City of Reading, narrowly the Reading Police Department, and Ruiz in his official capacity as Police Chief, under a *Monell* theory of liability.

[information about Errington] would be made public." *See Arneault*, 864 F. Supp. 2d at 396. The Amended Complaint satisfies the "made publicly" requirement as to the stigma-plus claims against Ruiz and Shade.

However, without any allegations against the remaining individual defendants, this Court is limited to finding that only Ruiz and Shade had the authority to handle and maintain Errington's personnel file. Since it was not alleged that Defendants Rothermal and Demko held any responsibility or took any action with respect to the file, Errington has failed to state a claim for procedural due process against Defendants Rothermal and Demko, and the Procedural Due Process claims will be dismissed as against these defendants. *See Arneault*, 864 F. Supp. 2d at 396 ("As to the other [defendants sued under a stigma-plus claim], we agree that no personal involvement on their part has been alleged relative to the alleged wrongdoing and, therefore, they should be dismissed.").

### c.  Falsity of the Statement

The last element of the "stigma" factor requires Errington to show that the statement was "substantially and materially false." *Kocher*, 548 F. App'x at 820 (citing *Hill*, 455 F.3d at 236). Errington has alleged that the internal affairs investigation in his personnel file consists of "unfounded[,] unsustained," and "baseless allegations." Am. Compl. ¶¶ 13, 91. Taking the allegations in the Amended Complaint as true, this Court is satisfied that Errington has "not failed totally to deny the charges about him," *McKnight*, 583 F.2d at 1239, and has sufficiently met the requirement that he allege the statement(s) to be false.

### 2.  "Plus"

After establishing a stigma to his reputation, a plaintiff must also show a "deprivation of some additional right or interest." *Kocher*, 548 F. App'x at 819 (quoting *Hill*, 455 F.3d at 236). In typical stigma-plus cases within the public-employment context, "[t]he creation and

dissemination of a false and defamatory impression is the 'stigma,' and the termination [of public employment] is the 'plus.'" *Id.* at 820 (quoting *Hill*, 455 F.3d at 236). However, this rule often presumes that the stigmatizing statement was made in the course of a plaintiff's termination from public employment, insinuating that the "stigma" and the "plus" occurred in tandem. *See, e.g., Hill*, 455 F.3d at 236; *Zucal v. Cnty. of Lehigh*, 660 F. Supp. 3d 334, 349 (E.D. Pa. 2023) ("The plus prong is generally met when someone is terminated from employment or denied a property interest.") (citing *Graham v. City of Philadelphia*, 402 F.3d 139, 142, n.2 (3d Cir. 2005)); *Damiano v. Scranton Sch. Dist.*, 135 F. Supp. 3d 255, 275 (M.D. Pa. 2015). Here, by contrast, the stigmatizing statement alleged is an internal affairs investigation kept in a personnel file years *after* retirement from public employ. So, some deprivation of a right or interest, other than Errington's employment termination, must be alleged.[11] The affected right or interest should represent "a change or extinguishment of a right or status guaranteed by state law or the Constitution." *Clark*, 890 F.2d at 619 (citing *Paul*, 424 U.S. at 701-12).

This Court reads the Amended Complaint to allege a "plus" where it states that Defendants "prevented [Errington] from gaining future employment." Am. Compl. ¶ 92. In so doing, Errington alleges that by maintaining the internal affairs investigation in his personnel file and distributing that information to prospective employers, Defendants have deprived him of a

---

[11]    Insofar as the content of the stigmatizing statement, i.e., the internal affairs investigation in Errington's file, is alleged to have been created around the time of Errington's retirement in 2020, it remains true that this Court already determined that Errington's retirement was not shown to be involuntary. *See Errington 1*, 2021 WL 3885177 (E.D. Pa. Aug. 31, 2021) and *Errington 1*, 2021 WL 6062245 (E.D. Pa. Dec. 22, 2021). Insofar as the investigatory information, as it appears in the file, is alleged to have been authored in early 2024, see Am. Compl. ¶¶ 33-34, 39-44, Errington "had already been terminated months before those statements, [so] there can be no connection between the statements and the termination." *See, e.g., Paterno v. Pennsylvania State Univ.*, 149 F. Supp. 3d 530, 542 (E.D. Pa. 2016), *aff'd*, 688 F. App'x 128 (3d Cir. 2017). Either way, Errington cannot allege that his "termination" in 2020 is a "plus" sufficient to make out a colorable stigma-plus claim.

right or interest in future employment with other law enforcement departments. However, Errington "has pointed to no specific constitutional guarantee safeguarding the interest he asserts has been invaded," nor any such protection afforded by state law. *Paul*, 424 U.S. at 700.

In Pennsylvania, public employees are considered at-will "unless otherwise indicated by statute or contract." *See Zucal*, 660 F. Supp. 3d at 350. To establish a property interest in *continued* employment for a job already possessed is already a high bar: "a person must have more than a unilateral expectation of continued employment; rather, []he must have a legitimate entitlement to such continued employment." *Id.* at 350 (citing *Elmore v. Cleary*, 399 F.3d 279, 282 (3d Cir. 2005)). Plaintiff offers no legal support for the notion that he has a cognizable property interest in *future* employment, and the Court finds none. Thus, without any specific statutory authority granting Errington entitlement in the positions he seeks, this Court is unable to find that he has satisfied the "plus" factor of the stigma-plus test. It is at this stage that Errington fails to state a procedural due process stigma-plus claim.[12]

### 3. Procedures Available to Provide Due Process of Law

Also relevant to the due process discussion, however, is the fact that in his Amended Complaint, Errington states that he "was afforded no due process in violation of the . . . Fourteenth Amendment[] of the United States Constitution," but fails to illustrate how.[13] Am.

---

[12]    Without having stated a claim for procedural due process, this Court need not reach the issue of *Monell* liability for the municipal defendants. Without a viable claim, this Court also need not address the defense of qualified immunity. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001); *see also Fields v. City of Pittsburgh*, 714 F. App'x 137, 143 (3d Cir. 2017) ("[Plaintiff's] § 1983 claim fails and we need not consider the issue of qualified immunity." (citing *Saucier*, 533 U.S. at 201)).

[13]    In the public employment context, when a plaintiff establishes that he was defamed in the course of being fired, "the employee is entitled to a name-clearing hearing" and his denial thereof may signify a lack of due process. *Kocher*, 548 F. App'x at 820 (quoting *Hill*, 455 F.3d at 236). Here, Errington had not been a public employee for several years when Defendants allegedly began their stigmatizing behavior of placing investigatory information into his personnel file. Errington does not assert that he was denied a name-clearing hearing, nor does

Compl. ¶ 96. In his Response, Errington alleges that the "redress process" available to him through Act 57 "is constitutionally inadequate and would have been futile" because it "requires a challenger to make its request for correction to the law enforcement agency," and Errington argues that Reading Police Department "should not be presumed [to be] a neutral arbitrator of a request for correction." Response at 25-26. In other words, Errington had the opportunity to present Reading Police Department with a written request to modify his personnel file but chose not to take advantage of it for fear that his request would be rejected. *See id.* Whether his belief is well-founded matters not. This Court cannot proceed in this analysis, let alone conclude that Errington was denied due process, because he concedes to never having availed himself of the procedure available to him. Errington's own subjective belief about the deficiencies of the procedural avenues available to him is not enough to allege a denial of due process. Without establishing that he was in fact deprived of due process of law, Errington has fundamentally failed to state a procedural due process claim.[14] Count V is dismissed without prejudice.

---

this Court consider it as a form of due process denied, since Errington would have had to take advantage of that opportunity while still employed with Reading Police Department. *See* Civil No. 5:21-CV-00118, Second Amended Complaint, ECF No. 22 at ¶¶ 42, 44 (In *Errington 1*, Errington admitted that he chose not to appeal his termination because "it would have been futile" and he "could not risk his pension.").

[14]    Though unclear from the Amended Complaint whether Errington asserts a substantive due process claim along with his procedural due process claim, this Court finds that he has failed to state one. Errington argues that due to Defendants' actions he "was denied the opportunity to continue his service in law enforcement, a profession to which he has dedicated the majority of his adult life." Am. Compl. ¶ 63. Even accepting this allegation as true, this Court is obligated to reiterate that "public employment is not a fundamental property interest protected by substantive due process." *Dondero v. Lower Milford Township*, 431 F. Supp. 3d 590, 602 (E.D. Pa. 2019) (citing *Nicholas v. Pa. State Univ.*, 227 F.3d 133, 142-43 (3d Cir. 2000) and *Hill*, 455 F.3d at 234 n.12). Errington has not alleged that the internal affairs investigation in his personnel file has prevented him from obtaining *any* form of employment, but merely that it has prevented him from obtaining public employment in a law enforcement position. This, in itself, is not a protected interest under the Fourteenth Amendment substantive due process clause. Accordingly, Errington fails to state a claim for substantive due process.

Errington is granted leave to file a second amended complaint which alleges facts in support of a

due process claim against Defendants Rothermal and Demko or otherwise dismisses the Due

Process claims against them, and in general to amend Count V to allege facts in support of a

"plus" and provide evidence of a lack of due process afforded him.

### C.  Supplemental Jurisdiction

With no viable federal cause of action remaining, this Court cannot exercise

supplemental jurisdiction over the state law claim of an Act 57 violation. However, this Court

will not yet dismiss the outstanding state law claim and will grant Errington leave to file a

second amended complaint. If Errington chooses not to file a second amended complaint or is

again unable to state a federal cause of action, this Court will decline supplemental jurisdiction

and dismiss all claims at that time. Errington will then have thirty days to file the state law claim

in state court. *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under

subsection (a) [providing for supplemental jurisdiction] ... shall be tolled while the claim is

pending and for a period of 30 days after it is dismissed unless State law provides for a longer

tolling period.").

### V.    CONCLUSION

In sum, Errington has failed to state a claim for a First Amendment violation or a

Fourteenth Amendment due process violation. Without a federal cause of action, this Court

cannot exercise supplemental jurisdiction over the Act 57 violation claim and need not address it.

Since Errington fails to plausibly present a federal question, this Court also does not reach the

issue of qualified immunity. For the reasons discussed above, the Motion to Dismiss Plaintiffs'

Amended Complaint is granted with leave to amend. Errington has 20 days from the date of this

opinion to file a second amended complaint. If Errington fails to timely file an amended

complaint which presents a federal question, all outstanding claims will be dismissed with prejudice and the case closed.

An appropriate Order follows.

BY THE COURT:

*/s/ Joseph F. Leeson, Jr.*
JOSEPH F. LEESON, JR.
United States District Judge